IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00188-WYD-CBS

WILLIAM E. HARVEY,
    Plaintiff,
v.

UNITED STATES OF AMERICA,
    Defendant.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Defendant United States of America's "Motion to Strike Expert Report and Expert Testimony of Elisabeth Harvey" (filed September 19, 2005) (doc. # 103). Pursuant to the February 12, 2004 Amended Order of Reference (doc. # 2) and the memorandum dated September 20, 2005 (doc. # 106), the motion was referred to the Magistrate Judge. The court has reviewed the motion, Mr. Harvey's Opposition (filed October 12, 2005) (doc. # 109), the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

Mr. Harvey was incarcerated at the Federal Correctional Institute in Littleton, Colorado ("FCI Englewood") from September 1991 to July 2002. Proceeding *pro se*, Mr. Harvey brings this lawsuit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, alleging medical malpractice by Bureau of Prisons ("BOP")

health care providers at FCI Englewood.  Mr. Harvey brings two Claims for Relief, alleging that the United States was negligent in failing to diagnose and properly treat his lung cancer.   (*See* First Amended Complaint, First and Second Claims for Relief). Specifically, Mr. Harvey alleges that the United States breached the standard of care by: (1) failing to inform him that at least two doctors suspected he had cancer; (2) failing to perform a bronchoscopy in January 2000; (3) failing to investigate other diagnoses; and (4) failing to perform any chest x-rays or CT scans between January 2001 and June 2002.  (*See* Mr. Harvey's Opposition to Defendant's Motion for Summary Judgment at pp. 33-34).  *See also* Mr. Harvey's Opposition to Defendant's Motion to Strike at pp. 5-6 ("The tests at issue here are the bronchoscopy of January of 2000 and the absence of x-rays between January of 2001 and June of 2002").

On June 29, 2005, Mr. Harvey served the United States with his "Second Disclosure of Expert Witnesses," including Elisabeth D. Harvey, R.N., as an expert and providing her expert report.  (*See* Exhibit A-2 to United States' Motion to Strike).  The United States now asks the court to strike her report and her testimony.

II.     Standards Governing Expert Testimony

Under the FTCA, the United States is liable "for injury . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the places where the act or omission occurred."  28 U.S.C. 1346(b)(1).  The alleged acts and omissions at issue here occurred at FCI Englewood. Therefore, Colorado law applies.

"Medical malpractice is a particular type of negligence action." *Greenberg v. Perkins*, 845 P.2d 530, 534 (Colo. 1993) (*en banc*) (citation omitted). "To establish a prima facie case for negligence, a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, *i.e.*, that the defendant's breach caused the plaintiff's injury." *Greenberg*, 845 P.2d at 533 (citations omitted). *See also Deasy v. United States*, 99 F.3d 354, 358 (10th Cir. 1996) (same). "Unless the subject matter of a medical malpractice action lies within the ambit of common knowledge or experience of ordinary persons, the plaintiff must establish the controlling standard of care, as well as the defendant's failure to adhere to that standard, by expert opinion testimony." *Melville v. Southward*, 791 P.2d 383, 387 (Colo. 1990) (citation omitted). "The reason for the requirement of expert opinion testimony in most medical malpractice cases is obvious: matters relating to medical diagnosis and treatment ordinarily involve a level of technical knowledge and skill beyond the realm of lay knowledge and experience. Without expert opinion testimony in such cases, the trier of fact would be left with no standard at all against which to evaluate the defendant's conduct." *Melville*, 791 P.2d at 387 (citation omitted).

"To establish a *prima facie* case, the plaintiff must establish that the defendant failed to conform to the standard of care ordinarily possessed and exercised by members of the same school of medicine practiced by the defendant." *Melville v. Southward*, 791 P.2d 383, 387 (Colo. 1990) (citations omitted). "The standard of care in a medical malpractice action is measured by whether a reasonably careful physician of the same school of medicine as the defendant would have acted in the same manner

as did the defendant in treating and caring for the plaintiff." *Melville*, 791 P.2d at 387 (citations omitted). *See also Connelly v. Kortz*, 689 P.2d 728, 729 (Colo. App. 1984) ("plaintiff in a medical malpractice case must prove that the defendant-specialist failed to meet the standard of care required of physicians in the defendant's specialty") (citation omitted).

The exclusion or admission of expert testimony is within the sound discretion of the district court. *See Nalder v. West Park Hospital*, 254 F.3d 1168, 1173 (10th Cir. 2001) (citations omitted). "A court must first consider whether the substance of the proffered [expert] testimony will be helpful to the fact finder." *Brooks v. People*, 975 P.2d 1105, 1109 (Colo. 1999) (citations omitted). "The court must then decide whether the witness serving as the conduit for such information is competent to render an expert opinion on the subject in question." *Brooks*, 975 P.2d at 1109 (citation omitted).

> In our view, therefore, the dispositive consideration in ruling on the admissibility of expert opinion testimony by a medical witness regarding whether the defendant, who practices in another school of medicine, has adhered to or deviated from the requisite standard of care in diagnosing or treating the plaintiff should be the following: (1) whether the testifying expert, although practicing a specialty different from that of the defendant, nonetheless is, by reason of knowledge, skill, experience, training, or education, so substantially familiar with the standard of care applicable to the defendant's specialty as to render the witness' opinion testimony as well-informed as would be the opinion of an expert witness practicing the same specialty as the defendant; or (2) whether the standard of care for the condition in question is substantially identical for both specialties. If a proper foundation establishes either of these evidentiary predicates for admissibility, the witness should be permitted to offer an expert opinion on the standard of care applicable to the defendant's specialty and on whether the defendant breached that standard of care. On the other hand, absent the proper foundation evidence, the expert witness practicing a specialty different from that of the defendant should not be permitted to offer an expert opinion on those matters.

*Melville*, 791 P.2d at 388-89 (holding "that expert testimony from a non-podiatrist orthopedic surgeon who was not familiar with podiatric foot care or the standard of care applicable to podiatrists was insufficient to establish a prima facie case of negligence against the podiatrist").  *See also Stoczynski v. Livermore*, 782 P.2d 834, 836 (Colo. App.1989) (holding no abuse of discretion in permitting an osteopathic physician to testify as to the chiropractic standard of care in spinal manipulation when the expert has acquired sufficient expertise through training, education, or experience); *Connelly*, 689 P.2d at 729 (holding no abuse of discretion when trial court disallowed an internal medicine specialist to testify to the standard of care for general surgeons when proposed expert denied having any expertise in surgery or having studied the standards of practice of surgeons in the Denver metropolitan area).[1]

III.   Analysis

Mr. Harvey has offered Ms. Harvey as an expert witness who will testify that Bureau of Prisons physicians and physician assistants failed to meet the standard of care in diagnosing and treating Mr. Harvey.  The United States argues that Ms. Harvey's report and testimony must be stricken because she is not qualified to give opinion testimony on the standards of care for the physicians or physician assistants whose conduct is challenged in this lawsuit.

Ms. Harvey is a registered nurse by training and experience, licensed in the state of California.  (*See* United States' Motion to Strike, Exhibit A-2, Exhibit A-3 at p. 45).  She is "certified as a wound, ostomy, continen[ce] nurse."  (*See* Exhibit A-3 at p.

45). She is not trained and has never practiced as a physician or a physician assistant. (*See* Exhibit A-3 at pp. 68-71). She does not know what training is required for physician assistants. (*See* Exhibit A-3 at pp. 70-71). She is not familiar with the practice standards for physician assistants in Colorado. (*See* Exhibit A-3 at pp. 75-76). She has not treated any lung cancer patients, done any physical exams, or interpreted any x-rays in at least the past ten years. (*See* Exhibit A-3 at pp. 46-49).

Ms. Harvey claims to be "qualified to provide expert opinions as to whether a physicians assistant adhered to a standard of care in diagnosing, assessing, and treating persons presenting" symptoms of "coughing and congestion" because she has "observed and assisted physician assistants in caring for persons presenting these symptoms." (Affidavit of Elisabeth D. Harvey at ¶ 7, attached to Mr. Harvey's Opposition to Defendant's Motion to Strike). It is Ms. Harvey's "belief that the standard of care . . . is the same for both nurses and physicians assistants." (Affidavit of Elisabeth D. Harvey at ¶ 9, attached to Mr. Harvey's Opposition to Defendant's Motion to Strike). Mr. Harvey argues that Ms. Harvey is qualified to give opinion testimony on the standard of care for physicians assistants "based on her own experiences, as well as her observing PA's and other nurses confronting the same symptoms."

The court cannot conclude that Ms. Harvey's personal experiences and observations of other nurses and physician assistants makes her qualified under Colorado law to give opinion testimony on the standard of care for physicians and physician assistants. "To qualify a witness as an expert on th[e] standard of care, the party offering the witness must establish the witness' knowledge of and familiarity with

6

the standard of care governing defendant's specialty." *Connelly*, 689 P.2d at 729 (citation omitted). "Although the witness need not be of the same specialty as the defendant, and may have acquired his expertise through training, education, or experience, . . . he must demonstrate more than a "casual familiarity" with the standards of practice of the defendant's specialty." *Connelly*, 689 P.2d at 729 (citation omitted). "[A] proper expert has a firm grasp on the appropriate standards, techniques and practices within the profession or specialty about which he or she is opining." *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 82-83 (Colo. 2001) (*en banc*) (citing *Melville,* 791 P.2d at 388 ("Clearly, when a proper foundation establishes that the expert witness, by reasons of knowledge, skill, experience, training, or education, is so substantially familiar with the standard of care applicable to the defendant's specialty as to assure the court that any opinion will be as well-informed as the opinion of an expert witness practicing the same specialty as the defendant, the expert witness should be permitted to offer an opinion on the standard of care and on whether the defendant conformed to or deviated from that standard")).

Ms. Harvey's personal experience as a registered nurse and observations of others do not amount to a substantial familiarity with the standards of care for physicians or physician assistants in Colorado. (*See, e.g.,* Exhibit A-3 at pp. 70-71, 75-76 (Ms. Harvey does not know what training is required for physician assistants and is not familiar with the practice standards for physician assistants in Colorado)). Ms. Harvey's alleged familiarity with the standard of care for physician assistants was partially based on a telephone conversation with a nurse practitioner regarding what to

"do for patients who come in and have a cough." (*See* Exhibit A-3 at pp. 66-67).  Other than Ms. Harvey's conclusory allegations, there is no evidence before the court that the standard of care for diagnosis and treatment applicable to the Bureau of Prisons' physicians and physician assistants in Colorado is substantially identical to that with which Ms. Harvey is familiar.  The court cannot conclude that Ms. Harvey has "a firm grasp on the appropriate standards, techniques and practices within the profession or specialty about which he or she is opining." *Redden*, 38 P.3d at 82-83.  Mr. Harvey has failed to demonstrate that Ms. Harvey "is, by reason of knowledge, skill, experience, training, or education, so substantially familiar with the standard of care applicable to the defendant's specialty as to render the witness' opinion testimony as well-informed as would be the opinion of an expert witness practicing the same specialty as the defendant" or that "the standard of care for the condition in question is substantially identical for both specialties." *Melville*, 791 P.2d at 388-89.  The court does not abuse its discretion in striking Ms. Harvey's expert report and refusing to allow her to give opinion testimony at trial on the standard of care for physicians or physician assistants in Colorado.

The court notes that Mr. Harvey has retained another expert witness, Steven Klompus, to testify at trial regarding the care and treatment Mr. Harvey received from Bureau of Prisons physician assistants.  The USA has conceded that, based upon Klompus' deposition testimony, a genuine issue of material fact remains whether Bureau of Prisons physician assistants breached the applicable standard of care in diagnosing and treating Mr. Harvey between the dates of May 31, 2002 and June 25,

2002.  (*See* Reply in Support of Motion for Summary Judgment (doc. # 104) at pp. 7-8).  Thus, the striking of Ms. Harvey's expert report and preclusion of her opinion testimony will not prohibit Mr. Harvey from presenting other evidence on the standard of care for the physician assistants whose conduct is at issue in this lawsuit.

Accordingly,

IT IS RECOMMENDED that Defendant United States of America's "Motion to Strike Expert Report and Expert Testimony of Elisabeth Harvey" (filed September 19, 2005) (doc. # 103) be GRANTED and that Ms. Harvey's expert report be stricken and her opinion testimony be precluded at trial.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121*

*East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States,* 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 7th day of November, 2005.

BY THE COURT:

s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge

1.  In 1988, the Colorado "General Assembly enacted a statutory provision that purports to establish criteria for permitting an expert witness to testify in a medical malpractice action." *Melville*, 791 P.2d at 389 n. 1.  The statute "applies to acts or omissions occurring on or after July 1, 1988." *Melville*, 791 P.2d at 389 n. 1.

> **Qualifications as expert witness in medical malpractice actions or proceedings**. No person shall be qualified to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician unless he not only is a licensed physician but can demonstrate by competent evidence that, as a result of training, education, knowledge, and experience in the evaluation, diagnosis, and treatment of the disease or injury which is the subject matter of the action or proceeding against the physician defendant, he was substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim on the date of the incident. The court shall not permit an expert in one medical subspecialty to testify against a physician in another medical subspecialty unless, in addition to such a showing of substantial familiarity, there is a showing that the standards of care and practice in the two fields are similar. The limitations in this section shall not apply to expert witnesses testifying as to the degree or permanency of medical or physical impairment.

Colo. Rev. Stat. § 13-64-401.