IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00188-WYD-CBS

WILLIAM HARVEY,

       Plaintiff,

v.

UNITED STATES OF AMERICA

       Defendant.

---

**MEMORANDUM ORDER REGARDING DEFENDANT'S MOTION
TO STRIKE EXPERT REPORTS OF DR. KRISTIE BOBOLIS AND DR. BRENT
VanHOOZEN, OR IN THE ALTERNATIVE, REQUEST TO REDEPOSE
THESE EXPERTS**

---

Magistrate Judge Craig B. Shaffer

       THIS MATTER comes before the court on Defendant United States of America's Motion

to Strike Expert Reports of Dr. Kristie Bobolis and Dr. Brent VanHoozen, or in the alternative,

Request to Redepose These Experts (Document # 102), filed on September 19, 2005.  Plaintiff

Harvey filed his Opposition to the Defendant's Motion to Strike on October 12, 2005.  The

United States filed a Reply in Support of Defendant's Motion to Strike on October 19, 2005.

Pursuant to the February 12, 2004 Amended Order of Reference (Document # 2) and the

memorandum dated September 20, 2005 (Document # 105), this motion was referred to the

Magistrate Judge.

       I held a hearing on the instant motion on October 20, 2005, which Plaintiff Harvey

attended by telephone.  The court carefully considered the arguments advanced in the parties'

1

papers and during the October 20th hearing, as well as the entire court file and the applicable case law.  At the conclusion of the October 20th hearing, the court granted in part and denied in part Defendant's Motion to Strike, and stated on the record the bases for that decision.  This Memorandum Order will further memorialize and explain that ruling.

## BACKGROUND FACTS

Proceeding *pro se*, William Harvey commenced this action on February 2, 2004, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, alleging medical malpractice by Bureau of Prisons ("BOP") health care providers.  Mr. Harvey was a federal prisoner incarcerated at the Federal Correctional Institution in Englewood, Colorado (hereinafter "FCI Englewood") from September 1991 to July 2002, and as such was under the direct medical care and supervision of the medical staff at that facility.  Plaintiff's Amended Complaint, accepted for filing on August 24, 2004, asserts that the United States was negligent in failing to diagnose and properly treat his lung cancer.  Specifically, Mr. Harvey alleges that the United States breached the applicable standard of care by: (1) failing to inform him that at least two doctors suspected he had cancer; (2) failing to perform a bronchoscopy in January 2000; (3) failing to investigate other diagnoses; and (4) failing to perform any chest x-rays or CT scans between January 2001 and June 2002.  Plaintiff contends that the failure of two internal medicine physicians and three physician's assistants employed at FCI Englewood to correctly diagnose or treat his lung cancer before July 2002 substantially reduced his chances of cure and survival.

On April 16, 2004, Plaintiff filed a Certificate of Review, pursuant to C.R.S. §13-20-602, in which Mr. Harvey certified that he had consulted with oncologists, pulmonologists and other doctors engaged in the diagnosis and treatment of cancer who are licensed to practice medicine in

2

North Carolina and California.  The Certificate of Review further stated that "these doctors are substantially familiar with applicable standards of care and practice as they relate to the acts and omissions alleged in the Plaintiff's Complaint" and "have indicated to the Plaintiff that the delay in correctly diagnosing and/or properly treating the Plaintiff's cancer was the proximate cause of his developing a Stage III(B) cancer."

This court held a Fed.R.Civ.P. 16(a) scheduling conference on May 24, 2004, at which time I established a discovery deadline of November 22, 2004 and a dispositive motion deadline of December 22, 2004.  The parties also were directed to designate, pursuant to Fed.R.Civ.P. 26(a)(2), affirmative experts[1] on or before August 24, 2004, and rebuttal experts on or before October 8, 2004.  Each of these deadlines had been proposed by the parties and were incorporated in the Scheduling Order executed by the court.  In the Scheduling Order, Plaintiff stated that he anticipated expert testimony from, "but not limited to, pulmonologists and oncologists, as well as other experts in the medical profession."

During the May 24, 2004 scheduling conference, defense counsel expressed some concern regarding Plaintiff's initial disclosures under Fed.R.Civ.P. 26(a)(1), noting that Mr. Harvey had not identified any medical professionals as individuals likely to have information that Plaintiff might use to support his claims.  Plaintiff was directed to supplement his Rule 26(a)(1) disclosures within ten days of the scheduling conference.

On August 20, 2004, Plaintiff Harvey filed a motion requesting a two-month extension of the deadline for designating expert witnesses.  Plaintiff's motion explained that he needed "additional time to consult expert witnesses, supply them with the X-rays and reports involved in this case, and have them prepare their reports on the matters at issue in this civil action."  *See*

Plaintiff's Motion for Extension of Time, at 1 (Document # 28).  Mr. Harvey stated that once he

obtained the requested copies of x-rays and related materials, they would be "supplied to the

Plaintiff's experts who will prepare reports regarding their expert opinions." *Id.* at 2.  The court

granted Mr. Harvey's motion on August 24, 2004, and extended the deadlines for designating

affirmative experts and rebuttal experts to October 25, 2004 and December 7, 2004, respectively.

I also extended the discovery deadline to January 21, 2005 and the dispositive motion deadline to

February 22, 2005.

   Plaintiff Harvey designated Drs. Brent VanHoozen and Kristie Bobolis as experts in this

case on October 22, 2005.  While Plaintiff's disclosures identified these witnesses, and other

medical practitioners, by name and medical speciality, and provided corresponding addresses and

telephone numbers, there was no description of the witnesses' anticipated testimony.  Defense

counsel sent a letter to Mr. Harvey on October 29, 2004, in which she took the position that

Plaintiff's treating physicians could "testify about matters such as your current condition and

prognosis" without preparing written reports under Rule 26(a)(2)(B).  Counsel argued, however,

that a complete expert report would be required "to the extent that you wish for any of these

doctors to testify about matters such as causation for your current medical condition or the

standard of care provided by Defendant's employees while you were still incarcerated." *See*

Exhibit A-2 attached to Defendant's Motion to Compel Plaintiff to Supplement Expert

Designations.  Mr. Harvey was asked to "clarify your intentions and/or remedy these deficiencies

no latter than November 15, 2004." *Id.*  On November 19, 2004, Defendant United States filed a

Motion to Compel Plaintiff to Supplement Expert Designations (Document # 38).  Defendant

argued that Mr. Harvey's disclosures were deficient under Fed.R.Civ.P. 26(a)(2)(B), which

mandates a written report and the disclosure of specific information by any witness who is

retained or specifically employed to provide expert testimony in the subject litigation.[2]

On December 11, 2004, Plaintiff Harvey sent a letter to defense counsel providing

"synopses of conversations" with his treating physicians.  *See* Exhibit B attached to Defendant's

Motion to Strike.  In that letter, Mr. Harvey represented that Dr. VanHoozen had been provided

with copies of his medical records from FCI Englewood.

> I made several inquiries of Dr. VanHoozen regarding the cancer in my right lung,
> the metastazied cancer in my left lung, and the treatments I had received as to the
> former. . . . When I informed Dr. VanHoozen that no x-rays had been taken for
> nearly eighteen months, despite persistent coughing and congestion, he believed
> that such did not comport with accepted practices of care.  This was especially
> true where the symptoms continued in spite of the many medications prescribed.

As for his conversations with Dr. Bobolis, Plaintiff wrote that

> On April 29, 2004, I met with Dr. Bobolis regarding treatment of the cancer in my
> left lung.  Prior reports from FCI Englewood and FMC Butner were provided to
> her.  I discussing my prior treatments, I asked whether she believed it unusual for
> th medical staff and FCI Englewood to continue to diagnose and treat me for
> pneumonia and bronchitis without having any x-ray to confirm or eliminate such
> diagnoses.

> Dr. Bobolis agreed that this was unusual because the accepted practice is to obtain
> a "baseline" through an x-ray.  She also believed that if an x-ray had been taken
> between the one on January 24, 2001 and the next one on June 24, 2002, given the
> size of the tumor discovered by the latter x-ray, the tumor would have been
> discovered much earlier and at a earlier stage its progression.

> On November 29, 2004, I again met with Dr. Bobolis regarding my treatment. At
> that time I told her that a sputum test had been conduct in December of 1999 and a
> large quantity of squamous cells were detected.  I asked her if this was normal.
> Dr. Bobolis thought that this was reason for concern.  I asked her what she would
> have done had this been presented to her.  Dr. Bobolis indicated that she would
> have ordered further tests to determine whether these cells were malignant.

Mr. Harvey concluded his December 11, 2004 letter by stating that "this is the extent of the

relevant information I obtained from these Doctors . . . I did have other discussions with these Doctors, but most of these discussions concerned by my treatments." *Id.*

In the wake of Mr. Harvey's letter, on December 21, 2004, Defendant moved to withdraw its motion to compel supplemental expert designations. Defendant stated that it "does not intend to object to Plaintiff's submission of summaries with his treating physicians as violating Fed.R.Civ.P. 26(a)(2)." *See* Motion to Withdraw Defendant's Motion to Compel (Document # 44).

This court held a telephonic status conference on December 30, 2004. At that time, I granted the parties' Joint Motion to Amend the Scheduling Order and set a deadline of February 14, 2005 to complete all expert disclosures, a discovery deadline of April 4, 2005, and a new dispositive motion deadline of May 2, 2005.

Dr. VanHoozen, Mr. Harvey's pulmonologist, was deposed in this case on March 31, 2005. At that time, Dr. VanHoozen testified that he was Mr. Harvey's treating physician from March to October 2004. During that same period of time, Dr. VanHoozen did not review any medical records from the Federal Bureau of Prisons. *See* Deposition Testimony of Dr. Brent VanHoozen, at p. 29, attached as Exhibit 13 to Defendant's Response in Opposition to Plaintiff's Motion to Modify Scheduling Order. Dr. VanHoozen also testified that since October 2004, he had not reviewed any medical records from the Bureau of Prisons and that Mr. Harvey had not given him any medical records to review. *Id.* at pp. 29-30. Dr. VanHoozen testified that without reviewing Bureau of Prisons medical records, he did not have an opinion "to a reasonable degree of pulmonological probability regarding whether or not there was a breach of the standard of care in Mr. Harvey's treatment while he was at the Bureau of Prisons," and did not have any opinion

6

"to a reasonable degree pf pulmonological probability that the medical care providers at the Bureau of Prisons failed to properly diagnose Mr. Harvey's lung cancer." *Id.* at pp. 49-52. Without reviewing the pertinent medical records, Dr. VanHoozen did not have any criticisms of the care that Plaintiff received from the Bureau of Prisons. *Id.* at p. 53. Dr. VanHoozen stated that he and Mr. Harvey "will have to meet to discuss if I'm going to be in an expert witness role, at which time I would have to review some of the records . . . ." *Id.* at 74.

Plaintiff's oncologist, Dr. Bobolis, was deposed on March 29, 2005. At that time, Dr. Bobolis testified that she had not seen any Bureau of Prisons medical records concerning Mr. Harvey's care and treatment prior to January 31, 2001. *See* Deposition Testimony of Dr. Kristie Bobolis, at pp. 13 and 26, attached as Exhibit 12 to Defendant's Response in Opposition to Plaintiff's Motion to Modify Scheduling Order. Dr. Bobolis testified that as recently as March 7, 2005, Mr. Harvey had not asked her to provide an expert opinion regarding standard of care. *Id.* at pp. 26-27, and 79. She also testified that without reviewing films and medical records dating back to Plaintiff's incarceration at FCI Englewood, she could not form an opinion as to whether there was a failure to diagnose Mr. Harvey's lung cancer while he was at that facility. *Id.* at pp. 36 and 80.

On April 12, 2005, Plaintiff Harvey filed a Motion to Modify Scheduling Order and a supporting brief (Documents # 61 and 62). As grounds for the requested extension, Plaintiff stated that he "needs the additional time in order to obtain empirical evidence regarding the standard of care for situations similar to those that existed in this case at a time critical to the issues of the lawsuit. The Plaintiff has been unable to complete this aspect of discovery sooner because its need did not become apparent until recently." *See* Brief in Support of Motion to

7

Modify Scheduling Order, at 2.

On May 2, 2005, Defendant moved for summary judgment, arguing that without expert testimony, Mr. Harvey had no evidence to establish the appropriate standard of care or to prove a causal connection between an alleged breach of the standard of care and his medical injury. Defendant's motion correctly noted that Mr. Harvey has the burden to "establish the controlling standard of care, as well as the defendant's failure to adhere to that standard, by expert testimony." *See* Defendant United States of America's Motion for Summary Judgment, at 8, citing *Melville v. Southward*, 791 P.2d 383, 387 (Colo. 1990). In light of the deposition testimony offered by Plaintiff's experts, the United States argued that "Harvey has no expert witness who will provide an opinion that the United States breached the applicable standard of care in failing to diagnose his lung cancer or failing to provide adequate medical treatment." *Id.* at 9.

On May 5 and 17, 2005, the court heard argument on Plaintiff's Motion to Modify Scheduling Order. Plaintiff explained that he wished to extend the discovery deadlines in order to obtain additional evidence to establish the requisite standard of care in Colorado. As he explained to the court, Mr. Harvey proposed to visit five walk-in clinics in Littleton, Colorado, selected at random. On each visit, Mr. Harvey intended to tell the clinic staff he had a cough, congestion and shortness of breath, which he says were the same symptoms he presented to the medical staff at FCI Englewood between 2000 and 2002. Mr. Harvey stated that he would also tell the clinic doctor that he had a prior history of pneumonia, but not intend to mention his current diagnosis of lung cancer. Mr. Harvey opined that the clinic doctors would immediately order a chest x-ray, thereby establishing a standard of care for Colorado and confirming the sub-standard care

provided by Bureau of Prison medical personnel.  Mr. Harvey suggested that each of these clinic doctors would qualify as a "treating" expert under Fed.R.Civ.P. 26(a)(2)(B), to the extent that they ordered an x-ray as "treatment" for a particular condition.  However, Plaintiff also conceded during the hearing on May 17, 2005, that the clinic doctors would not be providing any ongoing treatment after this initial consultation and would likely be a "retained" expert for purposes of trial.

While the court expressed some skepticism as to Plaintiff's proposed course of action, at the conclusion of the hearing on May 17, 2005, this court granted Plaintiff's Motion to Modify Scheduling Order and permitted Mr. Harvey to designate two additional experts on or before June 30, 2005.  Without deciding whether these individuals would qualify as "retained experts" or "treating physicians," I directed Mr. Harvey to provide written reports that fully comply with the requirements of Rule 26(a)(2)(B).  *See* Fed.R.Civ.P. 26(a)(2)(B) (vesting the court with discretion to modify the expert disclosure requirements).

On June 29, 2005, Plaintiff designated two additional experts: Elizabeth Harvey, a registered nurse, and Steven Klompus, a physician's assistant.  Both of the newly designated "experts" reside and practice medicine in California.  Plaintiff's Motion to Modify Scheduling Order had requested an extension of time "to obtain empirical evidence regarding the standard of care for situations similar to those that existed in this case at a time critical to the issues of the lawsuit."  Notably, it appears that neither Ms. Harvey nor Mr. Klompus have ever practiced medicine in Colorado.  Apparently, Mr. Harvey chose to abandon his plan to elicit opinions or testimony from walk-in clinic physicians in Colorado.

On August 1, 2005, Plaintiff filed his Response in Opposition to Defendants' Motion for

9

Summary Judgment, as well as an Amended Response on August 2, 2005.  On August 9, 2005,

Mr. Harvey filed his Exhibits in Support of His Opposition, which included an expert report from

Dr. Bobolis, dated July 18, 2005, and an expert report from Dr. VanHoozen, dated July 26, 2005.

The report signed by Dr. Bobolis purports to rely upon her lengthy experience as a board-

certified physician in internal medicine (1988), medical oncology (1991) and hematology (1992),

as well as her review of records from FCI Englewood and films from 1999 through 2002.  In her

report, Dr. Bobolis opines that

> had [Mr. Harvey] received appropriate work-up in January 2000 with
> bronchoscopy he would very likely had (sic.) been diagnosed with early stage lung
> cancer, which carries a high cure rate with surgery, on the order of 70% to 80%.
> The failure to repeat a CT scan rather than a chest x-ray in February 2000
> represents substandard follow-up of the abnormal CT findings in January,
> especially in light of the concern that Mr. Harvey could have a cancer with an
> endobronchial mass as the cause of his symptoms, and abnormal films in December
> 1999 through January 2000.  The failure to work up his continued symptoms of
> cough appropriately also represents substandard care with repeated failure to
> obtain follow-up films from January 2001 until June 2002. . . . The failure to
> diagnose his malignancy in early stage has greatly diminished any chance for long-
> term survival.

*See* Attachment F to Plaintiff's Exhibits in Support of his Opposition to the Defendant's Motion

for Summary Judgment.

Dr. VanHoozen's expert report, dated July 26, 2005, was based upon his review of

Plaintiff's medical records from September 26, 1991 through March 4, 2003, eight chest

radiographs from September 2, 1993 through June 25, 2002, and written opinions provided by

Defendant's experts.  Dr. VanHoozen apparently did not receive these records until July 5, 2005.

Dr. VanHoozen's report concludes, in pertinent part, that

> For the most part, I believe you received excellent care while remanded to the
> Federal Bureau of Prisons.  I do however believe that the community standard of

care was breached during the period of December 23, 1999 through February 28, 2000. During this time you were appropriately recognized as being at risk for an endobronchial obstruction (such as a malignancy) producing the right upper lobe pneumonia. It was appropriately recommended by Dr. Tsuda and Dr. Kraus that you receive a chest CT scan and a bronchoscopy. However, despite the presence of enlarged mediastinal lymph nodes, it was felt by the consulting pulmonologist, Dr. O'Leary that a follow-up chest radiograph was sufficient to exclude malignancy. . . . I believe that it is quite likely that an early malignancy was present at the time of your pneumonia in December 1999. The cancelled bronchoscopy was a missed opportunity to uncover this. Likewise, a follow-up CT should have been done instead of the follow-up chest radiograph in order to evaluate for persistent mediastinal adenopathy.

*See* Attachment G to Plaintiff's Exhibits in Support of his Opposition to the Defendant's Motion for Summary Judgment.

## ANALYSIS

Defendant has moved, presumably pursuant to Fed.R.Civ.P. 37(c), to strike the expert reports of Dr. Bobolis and Dr. VanHoozen proffered on August 9, 2005 in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment. The United States first argues that the reports were untimely in light of the expert disclosure deadlines established by this court. Moreover, Defendant contends that the July 2005 reports cannot be considerable "supplemental expert reports" because the December 2004 Synopses did not comply with the requirements of Rule 26(a)(2)(B). Finally, the United States argues that it will be prejudiced if the District Court considers expert reports that substantially expand upon the limited information provided in the December 2004 Synopses and the doctors' deposition testimony in March 2005.

Mr. Harvey responds that the United States waived any Rule 26(a)(2) objections to the December 2004 Synopses by withdrawing its earlier Motion to Compel Plaintiff to Supplement Expert Designations. In light of that waiver, Plaintiff presumed that "if the need arose, the

Plaintiff could submit his expert reports in support of his Opposition to the summary judgment motion." *See* Plaintiff's Opposition to the Defendant's Motion to Strike, a 4.  Plaintiff also argues that sanctions are unwarranted since his failure to comply with Rule 26(a)(2) was justified and non-prejudicial.

Rule 37(c)(1) of the Federal Rules of Civil Procedure states that where a party fails to make a disclosure required by Rule 26(a) or Rule 26(e)(1), that party may not use at trial any witness or information not so disclosed, unless the court determines that the failure to disclose was substantially justified or harmless.  *See* Fed.R.Civ.P. 37(c)(1).  The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a) or Rule 26(e).  *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995).  While Rule 37(c)(1) is written in mandatory terms, it also vests the court with discretion to impose "other appropriate sanctions" in addition to or in lieu of an order striking witnesses or evidence not properly disclosed.  *See Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (recognizing that Rule 37(c) vests broad discretion with the trial court).  *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations).

As a threshold matter, the court must determine whether Plaintiff Harvey has complied with his disclosure obligations under Rule 26(a) and (e).  Sanctions under Rule 37(c) are not warranted in the absence of a failure to disclose.

12

I.      *Plaintiff's Compliance with Rule 26(a)(2)*

Rule 26(a)(2) of the Federal Rules of Civil Procedure explicitly states that "a party shall disclose to other parties the identity of *any person* who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence."[3]  *See* Fed.R.Civ.P. 26(a)(2)(A) (emphasis added).  *See also Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 501 (D. Md. 1997) (even in the case of a "hybrid" witness who will provide both factual testimony and expert opinions, a party must still disclose that witness' identity under Rule 26(a)(2)(A)).  When the expert is "a witness who is retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony," this disclosure obligation must take the form of a signed written report.  *See* Fed.R.Civ.P. 26(a)(2)(B).  A retained expert must provide a written report which includes, *inter alia*, "a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information considered by the witness in forming the opinions."  The written report should explain "how" and "why" the expert reached the opinions they intend to offer at trial.  *See Reed v. Binder*, 165 F.R.D. 424, 428 n. 6 (D. N.J. 1996) (an expert report should indicate "'what' the expert say, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed").

The Advisory Committee Notes to Rule 26(a)(2)(B) state that "a treating physician . . . can be deposed or called to testify at trial without any requirement for a written report."  *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a)(2)(B).  The treating physician is offering testimony "because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of lawsuit."  *Bucher v. Gainey Transportation*

13

*Service of Indiana, Inc.*, 167 F.R.D. 387, 390 (M.D. Pa. 1996). The Advisory Committee presumably felt that a written report from a treating physician would not be necessary because the treating physician prepares contemporaneous notes documenting his observations, findings and treatment regime. *See Sprague v. Liberty Mutual Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H. 1998) (observing that "unretained experts, who formed opinions from pre-litigation observation, invariably have files from which any competent trial attorney can effectively cross-examine"). *Cf. Lamere v. New York State Office for the Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004) (a treating physician's medical records prepared in the course of treatment "are, in essence, an early disclosure of opinions before a deposition or testimony is conducted").

The disclosure requirements under Rule 26(a)(2)(B), however, should not turn on the expert's label or classification. It is the substance of the expert's testimony, not the status of the expert, which will dictate whether a Rule 26(a)(2)(B) report will be required. *See Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003), citing *Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993).[4] Thus, a written report is appropriate when a treating physician intends to offer testimony at trial with regard to the applicable standard of care. *Harville v. Vanderbilt University, Inc.*, 2003 WL 22025028 (6th Cir. 2003).

> The determinative issue is the scope of the proposed testimony. For example, a treating physician requested to review medical records of another health care provider in order to render opinion testimony concerning the appropriateness of the care and treatment of that provider would be specifically retained notwithstanding that he also happens to be the treating physician.

*Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995). "A treating physician who has formulated opinions going beyond what was necessary to provide appropriate care for the injured party steps into the shoes of a retained expert for purposes of Rule 26(a)(2)." *Thomas v.*

*Consolidated Rail Corp.*, 169 F.R.D. 1, 2 (D. Mass. 1996). Similarly, when a treating physician's information or opinions were developed for trial, or where their expert testimony will concern matters not based on observations during the course of treatment, the treating physician will be required to prepare a written report. *See Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441-42 (D. Colo. 2000). *See also Zarecki v. National Railroad Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996) (rejecting plaintiff's argument that a treating physician was exempt from reporting requirement where the physician's testimony concerned professional opinions developed for trial).

Defendant apparently concedes that Drs. Bobolis and Dr. VanHoozen are treating physicians. Nevertheless, the December 2004 Synopses indicated that Dr. VanHoozen held the opinion that a failure to take "x-rays . . . for nearly eighteen months, despite persistent coughing and congestion, . . . did not comport with accepted medical practices." The summary of Dr. Bobolis' anticipated testimony was more equivocal. According to the December 2004 Synopses, Dr. Bobolis was aware of Mr. Harvey's prior treatment at FCI Englewood, and viewed as "unusual" the decision by the FCI Englewood medical staff "to continue to diagnosis and treat [Plaintiff] for pneumonia and bronchitis without having any x-ray to confirm or eliminate such diagnosis." A reasonable interpretation of the December 2004 Synopses would lead to the conclusion that Mr. Harvey anticipated eliciting expert opinions from these doctors concerning the appropriateness of care and treatment provided by a previous medical practitioner. Such opinions would trigger an obligation to prepare Rule 26(a)(2)(B) reports.

However, on December 21, 2004, the United States moved to withdraw its Motion to Compel Plaintiff to Supplement Expert Designations. In abandoning its challenge to the

15

sufficiency of Plaintiff's December 2004 Synopses, Defendant indicated that it "does not intend to object to Plaintiff's submission of summaries with his treating physicians as violating Fed.R.Civ.P. 26(a)(2)." The pending motion to strike argues that Mr. Harvey cannot tender "supplemental" reports from Drs. Bobolis and VanHoozen because he did not file proper Rule 26(a)(2)(B) reports in the first instance. I do not find that argument persuasive. This court will not permit Defendant to belatedly revive its Rule 26(a)(2)(B) challenge to the sufficiency of the December 2004 Synopses. *Cf. Continental Industries, Inc. v. Integrated Logistics Solutions, LLC*, 211 F.R.D. 442, 444 (N.D. Okl. 2002) (holding that a failure to pursue remedies in a timely manner may result in a waiver of discovery violations).

However, the recent submissions by Drs. Bobolis and VanHoozen clearly proffer opinions "in anticipate of litigation" that mandate compliance with Rule 26(a)(2)(B). Although Mr. Harvey's Synopsis stated that Dr. VanHoozen had been provided with copies of Plaintiff's medical records from FCI Englewood, Dr. VanHoozen testified that he had not reviewed any medical records from the Federal Bureau of Prisons while he was Mr. Harvey's treating physician from March to October 2004. Dr. VanHoozen also testified that since October 2004, he had not reviewed any medical records from the Bureau of Prisons. More significantly, Dr. VanHoozen testified that without reviewing Bureau of Prisons medical records, he did not have an opinion "to a reasonable degree of pulmonological probability regarding whether or not there was a breach of the standard of care in Mr. Harvey's treatment while he was at the Bureau of Prisons," and did not have any opinion "to a reasonable degree pf pulmonological probability that the medical care providers at the Bureau of Prisons failed to properly diagnose Mr. Harvey's lung cancer."

16

Dr. VanHoozen's letter of July 26, 2005 states that he did not receive Mr. Harvey's Bureau of Prisons medical records until July 5, 2005. The court can only infer that Dr. VanHoozen did not require these records in his capacity as Plaintiff's "treating physician" and that Dr. VanHoozen reviewed these records solely in anticipation of litigation.

Similarly, Dr. Bobolis's indicates in her letter of July 18, 2005 that Mr. Harvey has been under her care since April 29, 2004. In the same letter, Dr. Bobolis expresses certain opinions concerning perceived deficiencies in the medical care provided by Bureau of Prisons personnel, and states that her "conclusions are based on review of records from FCI Englewood and films from 1999 through 2002." During her deposition in March 2005, Dr. Bobolis stated that she had not seen any Bureau of Prison medical records concerning Mr. Harvey's care and treatment prior to January 31, 2001. It seems reasonable to conclude that Dr. Bobolis received pertinent Bureau of Prisons medical records after her deposition and approximately a year after commencing her treatment of Mr. Harvey. Without information to the contrary, it appears that Dr. Bobolis did not review the FCI Englewood medical records for purposes of treating Mr. Harvey's Stage IV lung cancer, but rather in anticipation of providing expert testimony on the appropriate standard of care.

While it is possible that Drs. Bobolis and VanHoozen formed their "standard of care" opinions in the course of treating Mr. Harvey, the timing of events and the entire record casts considerable doubt on that possibility. To the contrary, the chronology of events indicates that the doctors formulated these pivotal opinions after their depositions and in anticipation of their appearance as a witness at trial. Plaintiff should have fully disclosed the opinions of Drs. Bobolis and VanHoozen pursuant to Rule 26(a)(2)(B) prior to their depositions. Mr. Harvey will not be

17

sanctioned for this specific omission only because the United States elected to waive the violation

by withdrawing its Motion to Compel Plaintiff to Supplement Expert Designation

II.      *The Timeliness of Plaintiff's "Supplemental" Expert Reports*

As an alternative basis for relief, Defendant argues that the July 2005 reports of Drs.

Bobolis and VanHoozen should be struck as untimely based upon deadlines set by this court.

Defendant notes that the expert reports were provided more than nine months after the October

25, 2004 deadline for designation of affirmative experts.

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the

interests of justice, in part, by minimizing surprise at trial.  *United States ex rel. Schwartz v. TRW,*

*Inc.*, 2002 WL 31688812 (C.D. Cal. 2002).  In that regard, the rationale for *timely* expert

designations under Rule 26(a)(2) does not distinguish between retained and non-retained experts.

> Formal disclosure of experts is not pointless.  Knowing the identity of the
> opponent's expert witnesses allows a party to properly prepare for trial. . . . The
> failure to disclose experts prejudiced [Defendant] because there are
> countermeasures that could have been taken that are not applicable to fact
> witnesses, such as attempting to disqualify the expert testimony . . . , retaining
> rebuttal experts, and holding additional depositions to retrieve the information not
> available because of the absence of a report.

*Musser v. Gentiva Health Services*, 356 F.3d 751, 757-58 (7th Cir. 2004) (internal citations

omitted).

The court must also acknowledge the important role a scheduling order plays in the

management of its docket.  *Cf. Washington v. Arapahoe County Department of Social Services,*

197 F.R.D. at 441 (noting that a "scheduling order is an important tool necessary for the orderly

preparation of a case for trial").  *See also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215

F.R.D. 100, 101 (S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty

in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed"). However, it appears that on or about October 22, 2004, Plaintiff identified Dr. Bobolis and Dr. VanHoozen as "the experts he may rely upon." While Defendant initially challenged the adequacy of Plaintiff's disclosures, Mr. Harvey identified these experts within the prescribed deadline. Once again, Defendant must suffer the consequences of its decision to withdraw the earlier motion to compel supplemental disclosures. Accordingly, I will not strike these expert reports as violative of deadlines set pursuant to Rule 16.

While the most recent reports from Drs. Bobolis and VanHoozen may not violate scheduling deadlines, Plaintiff has an independent obligation to comply with the requirements of Rule 26(e)(1). Even if the parties agreed to treat the December 2004 Synopses as the functional equivalent of a expert report under Rule 26(a)(2)(B), Plaintiff was required to supplement his December 2004 Synopsis when he realized that the disclosed information was incomplete or inaccurate, unless the additional or corrective information had been made known to the opposing party. With respect to an expert from whom a Rule 26(a)(2)(B) report is required, the duty to supplement includes both information provided in a written report, as well as information disclosed during the expert's deposition. *See* Fed.R.Civ.P. 26(e)(1). In this case, I find that Plaintiff failed to supplement his expert disclosures on a timely basis. Again, a chronological review of salient events is illuminating.

Mr. Harvey was aware, as early as April 16, 2004 when he filed his Certificate of Review, that the applicable standard of care would be a pivotal issue in this case. On August 20, 2004, Plaintiff requested a two-month extension of the deadline for designating expert witnesses, stating that he needed "additional time to consult expert witnesses, supply them with the X-rays and

reports involved in this case, and have them prepare their reports on the matters at issue in this civil action." Plaintiff's August 20th motion explicitly stated that his experts "will prepare reports regarding their expert opinions." On December 15, 2004, the parties filed a Stipulated Motion to Amend Scheduling Order, which specifically noted that Mr. Harvey had not identified any physicians who "will render testimony regarding causation or standard of care."

Dr. VanHoozen's deposition testimony on March 31, 2005 departed, in significant respects, from the earlier Synopses provided by Plaintiff. Although Mr. Harvey's Synopses stated that Dr. VanHoozen had been provided with copies of Plaintiff's medical records from FCI Englewood, Dr. VanHoozen testified that he had not reviewed any medical records from the Federal Bureau of Prisons while he was Mr. Harvey's treating physician from March to October 2004. Dr. VanHoozen also testified that since October 2004, he had not reviewed any medical records from the Bureau of Prisons. More significantly, Dr. VanHoozen testified that without reviewing Bureau of Prisons medical records, he did not have an opinion "to a reasonable degree of pulmonological probability regarding whether or not there was a breach of the standard of care in Mr. Harvey's treatment while he was at the Bureau of Prisons," and did not have any opinion "to a reasonable degree pf pulmonological probability that the medical care providers at the Bureau of Prisons failed to properly diagnose Mr. Harvey's lung cancer."

Dr. Bobolis' deposition testimony on March 29, 2005 was equally revealing. The December 2004 Synopses stated that Dr. Bobolis had been provided with medical reports from FCI Englewood. The Synopses also proffered that Dr. Bobilis had characterized as "unusual" certain treatment decisions made Bureau of Prison medical personnel. However, during her March 29, 2005 deposition, Dr. Bobolis testified that she had not seen any Bureau of Prisons

20

medical records concerning Mr. Harvey's care and treatment prior to January 31, 2001. She

further testified that without reviewing films and medical records dating back to Plaintiff's

incarceration at FCI Englewood, she could not form an opinion as to whether there was a failure

to diagnose Mr. Harvey's lung cancer while he was at that facility.

Notwithstanding the discrepancies between the witnesses' deposition testimony and the

December 2004 Synopses, Plaintiff did not provide any supplementation prior to the filing of

Defendant's motion for summary judgment on May 2, 2005. Interestingly enough, Mr. Harvey

moved on April 12, 2005, to modify the existing scheduling, citing, in part, the need for

"additional time to obtain empirical evidence regarding the standard of care in this case." Plaintiff

claimed that the need for this "empirical evidence" had not become apparent "until recently." This

claim of surprise seems remarkable in light of prior filings with the court. On May 17, 2005, I

granted Plaintiff's motion in part and permitted Mr. Harvey to designate "two additional experts."

However, I required these new experts to furnish written reports that fully complied with the

requirements of Rule 26(a)(2)(B)

On August 9, 2005, Plaintiff filed the exhibits in support of his Opposition to the

Defendant's Motion for Summary Judgment. Included among those exhibits were supplemental

reports from Dr. Bobolis and Dr. VanHoozen, dated July 18, 2005 and July 26, 2005,

respectively. Apparently, Defendant received these supplemental reports for the first time on

August 9, 2005, more than four months after the doctors' depositions and three months after

Defendant's motion for summary judgment was filed.

Under the circumstances, I conclude that Plaintiff failed to comply in a timely manner with

the requirements of Rule 26(e)(1). Again, Rule 26(e)(1) requires a party to supplement

disclosures when they "learn that in some material respect the information is incomplete or

incorrect." *Cf. Tenbarge v. Ames Taping Tool Systems, Inc.*, 190 F.3d 862, 865 (8th Cir. 1999)

(noting that "discovery of expert opinion must not be allowed to degenerate into a game of

evasion").  I find it difficult to believe that Mr. Harvey did not immediately perceive the

contradictions between his December 2004 Synopses and his experts' deposition testimony.  Mr.

Harvey has offered no justification for this delay or good reason why Dr. Bobolis or Dr.

VanHoozen could not have provided supplemental reports more expeditiously.  *See Southern*

*States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (in a

case where plaintiff failed to timely disclose a supplemental opinion by its expert, the court noted

that Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery

rules as a precondition for imposing sanctions).

A party who fails to provide the required expert disclosures may not use at trial any

witness not so disclosed, unless the court determines that the failure to disclose was substantially

justified or harmless.  *See* Fed.R.Civ.P. 37(c)(1).  Sanctions should not be imposed under Rule

37(c)(1) where the failure to disclose was substantially justified or harmless.  For purposes of

Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party

has a reasonable basis in law and fact, and where there exists a genuine dispute concerning

compliance. *Nguyen v. IBP, Inc.*, 162 F.R.D. at 680.  "Failure to comply with the mandate of the

Rule is harmless when there is no prejudice to the party entitled to the disclosure." *Id.*

> The determination of whether a Rule 26(a) violation is justified or harmless is
> entrusted to the broad discretion of the district court.  A district court need not
> make explicit findings concerning the existence of a substantial justification or the
> harmlessness of a failure to disclose.  Nevertheless, the following factors should
> guide its discretion: (1) the prejudice or surprise to the party against whom the

testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d at 993. The court remains mindful that exclusion of evidence is an drastic sanction. *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 604 (10th Cir. 1997).

Applying the *Woodworker's* factors to the record before the court, I conclude that Harvey's failure to comply with its obligations under Rule 26(e)(1) was not substantially justified. The court also does not find that Plaintiff's non-compliance was harmless. *Cf. Lintz v. American General Finance, Inc.*, 1999 WL 619045, * 6 (D. Kan. 1999) (noting that non-compliance is harmless only when there is no prejudice to the opposing party). In this case, Defendant has expended time and resources in preparing a motion for summary judgment that might have been avoided by timely production of Plaintiff's expert reports. *See Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) (recognizing that delay and mounting costs can equate to prejudice). *See also Indemnity Insurance Company of North America v. American Eurocopter, LLC,*, 227 F.R.D. 421, 425 (M.D.N.C. 2005) ("merely identifying a witness as an expert without requiring the identification of the opinions may render the depositions more difficult"). Certainly, Defendant is prejudiced by the need to re-depose Plaintiff's experts. Had Mr. Harvey supplemented his December 2004 Synopses in a timely manner, the United States would have been in a position to factor that additional information into its discovery plan, would have had that information available when the experts were deposed in March 2005, and could have taken that information in account in deciding whether to file a motion for summary judgment. *Cf. Perkasie Industries Corp. v. Advance Transformer, Inc.*, 143 F.R.D. 73, 76-77 (E.D. Pa. 1992) (holding that a party

is not permitted to postpone identifying the substance if its witnesses' testimony until a critical

point in the proceedings at which it will become extremely burdensome for his opponent to

prepare effectively to meet them).  In weighing the element of prejudice or surprise, the court also

will take heed of the purposes underlying Rule 26.  "The importance of . . . witness disclosures

and the harms resulting from a failure to disclose need little elaboration."  *Licciardi v. TIG Ins.*

*Group.*, 140 F.3d 357, 363 (1st Cir. 1998) (noting that Rule 26 is designed in part to eliminate

unfair surprise).

    As for the second and third *Woodworker's* factors, the court recognizes that a trial date

has not been set in this case.  That fact affords a greater ability to cure any prejudice to Defendant

and minimizes the possibility of trial disruption.  To suggest, however, that sanctions are not

appropriate simply because the trial court can provide a further extension of time or delay the trial

would effectively absolve Plaintiff of any responsibility to comply with his discovery obligations.

Rule 26(a) and (e) are designed to facilitate case management and the discovery process.

Certainly, Plaintiff's untimely supplementation has disrupted those objectives.

    Finally, with respect to the fourth factor, Defendant has not offered any evidence that

would demonstrate that Mr. Harvey's failure to comply with Rule 26(e)(1) was the product of

bad faith or willfulness.  However, Plaintiff's lack of bad faith alone may not be enough to

overcome the other three factors.  *Cf. Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 955 (10th Cir.

2002), *cert. denied*, 537 U.S. 1066 (2002).  Plaintiff should not be permitted to ignore his

disclosure obligations and then avoid sanctions simply by claiming his deficiencies were not

willful.

    Consistent with the primary goal of Rule 37 sanctions, which is to deter misconduct, "the

sanction imposed should be the least severe of those available, which appears adequate to deter and punish the wrongdoer." *Hite v. The PQ Corp.*, 1998 WL 895893, *2 (D. Kan. 1998). Defendant's motion requests an order striking the July 2005 expert reports of Dr. Bobolis and Dr. VanHoozen from Plaintiff's Response in Opposition to Motion for Summary Judgment. After carefully considering the *Woodworker's* factors and the objectives underlying Rule 37(c), I find that the sanction specifically requested by the United States is not warranted under the facts in this case. *See Scott v. IBM Corp.*, 196 F.R.D. 233, 247 n. 9 (D.N.J. 2000) (noting that exclusion of evidence under Rule 37(c) is not appropriate unless the resulting prejudice cannot be cured); *Comuso v. National Railroad Passenger Corp.*, 1998 WL 800342 *2 (E.D. Pa. 1998) (holding that the importance of the excluded testimony is also an important final consideration in considering Rule 37(c) sanctions). I conclude that a lesser sanction is sufficient to vindicate the interests underlying Rule 26(a) and (e).

In holding that sanctions are appropriate, the court acknowledges Plaintiff's *pro se* status and his medical condition. *See, e.g., Gaines v. Stenseng,* 292 F.3d 1222, 1224 (10th Cir. 2002) (holding that *pro se* pleadings should be construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers). This court has consistently recognized that Mr. Harvey's cancer creates certain complications that may not be experienced by other litigants. For example, I have repeatedly allowed Mr. Harvey to appear at hearings and other court proceedings by telephone. Indeed, Mr. Harvey has yet to physically appear for any proceedings before this court. I have also granted motions to extend deadlines based upon conflicting demands imposed by Plaintiff's medical condition. *See, e.g,,* Plaintiff's Motion for Extension of Time, dated August 20, 2004, and Plaintiff's Brief in Support of Motion to Modify Scheduling Order, dated April 12,

2005.  However, once a *pro se* litigant is in court, he or she must conform to the relevant law and rules of court, including the Federal Rules of Civil Procedure.  *See, e.g., Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994); *Moon v. Newsome*, 863 F.2d 835, 937 (11th Cir. 1989).

## CONCLUSION

Accordingly, for the foregoing reasons, I will deny in part and grant in part Defendant United States of America's Motion to Strike Expert Reports of Dr. Kristie Bobolis and Dr. Brent VanHoozen, or in the alternative, Request to Redepose These Experts (Document # 102).  The court will not strike the expert reports of Dr. Bobolis and Dr. VanHoozen, because I believe that sanction is unwarranted under the totality of circumstances.  However, I will grant Defendant's motion to the extent it seeks leave to re-depose these experts.  Each of those depositions will be limited to two hours in length.

Recognizing the additional costs that inevitably result from inefficient discovery, I will also require, as an appropriate sanction for Plaintiff's failure to comply with disclosure obligations under Rules 26, that Mr. Harvey pay the amount of $750 to defray a portion of the additional expense that may be incurred by the United States as a result of these additional depositions.  *See Wasko v. Moore*, 2005 WL 226241, *3 (10th Cir. 2005) (noting that even if a party "shows a total inability to pay, 'the court may assess a moderate sanction to deter future abusive litigation'").  *See also Dodd Insurance Services, Inc. v. Royal Insurance Co.*, 935 F.2d 1152, 1160  (10th Cir. 1991) (noting that a party's professed inability to pay a monetary sanction is not an absolute bar; the party being sanctions has the burden of coming forward with evidence of their financial status or their inability to pay any sanction).  I will stay this portion of the Memorandum Order for a

period of 14 days to allow Plaintiff Harvey an opportunity to present evidence of his inability to pay the sanction imposed.  Plaintiff will also be responsible for any fees charged by Dr. Bobolis or Dr. VanHoozen to prepare for and attend their second deposition.  *Cf. Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 642 (D. Kan. 2001).  The court concludes that no other sanction is appropriate or necessary to achieve the objectives underlying Rules 26 and 37.

Defendant's motion also requests leave to file a renewed motion for summary judgment after re-deposing Dr. Bobolis and Dr. VanHoozen.  In view of the grounds asserted in Defendant's motion for summary judgment and this court's ruling on the instant motion to strike, it would seem that the pending motion for summary judgment may be moot.  Accordingly, Defendant is directed to file, within ten (10) days of receipt of this Memorandum Order, a status report indicating whether the United States will persist with its pending motion for summary judgment or whether the United States will withdraw that motion in anticipation of re-deposing Drs. Bobolis and VanHoozen on their opinions concerning causation and standard of care.  This obligation to provide a status report will not be effected by any objection which Mr. Harvey may assert to the sanctions imposed herein.

DATED this 28th day of November, 2005.

BY THE COURT:

s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge

1.  *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a)(2) ("in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue

before other parties are required to make their disclosures with respect to that issue").

2.  Notably, Defendant's motion was devoid of any case citations.  Although Defendant cites several pertinent cases in its Reply in Support of Defendant's Motion to Strike, none of those cases were referenced in Defendant's Motion to Compel Plaintiff to Supplement Expert Designations.  The court is left to wonder more thorough briefing from the outset might have avoided the present dispute.

3.  In particular, Rule 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *See* Fed.R.Evid. 702.

4.  Although *Patel* was decided prior to the 1993 Amendment to Fed.R.Civ.P. 26, the reasoning underlying that decision remains persuasive.  *Zurba v. United States*, 202 F.R.D. 590, 592 ((N.D. Ill. 2001).  *Cf. Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999).